ARTHUR E. WHITNEY *vs.* MARY H. MILLER.

Suffolk. November 12, 1909. — May 16, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Deed*, Construction.

One R., who was the owner of a mill pond and the surrounding land, all of which was subject to a mortgage, made a deed, to a purchaser named G., of his equity of redemption in a parcel of this land south and west of a part of the mill pond and bounded on the northerly and easterly sides by the edge of the pond. On the same day the mortgagee of all the land executed a deed of release to G. of the same parcel of land with the same description except that the northerly and easterly sides were described as bounded " by the mill pond belonging to R." Both of the deeds were acknowledged and recorded on the day of their execution and were recorded on consecutive pages of the same book in the registry of deeds. The description of the property in the deed of release from the mortgagee concluded with the words, " with all the privileges mentioned in a deed given by said R. to said G. this day and subject to all the restrictions and reservations therein mentioned." The restrictions and reservations in the deed of R. gave G. " the privilege of filling up the mill pond on the northerly and easterly sides of the aforenamed premises one rod in width from the lines above

described." "The lines above described" were "the edge of my mill pond" and "the edge of said mill pond." Upon a petition in the Land Court for a registration of the title to a lot of land covered by the mill pond which was acquired by the petitioner under a deed from the mortgagee named above, after his foreclosure of the mortgage upon the portions of the land not released from the mortgage, and which was confirmed by a deed from the assignee in bankruptcy of the estate of R., the respondent claimed title under G., and contended that the northerly and easterly boundary of his land was not the edge of the mill pond but was the thread of a certain stream on the other side of the land claimed by the petitioner, basing his contention on the ground that the partial release to G. of the mortgage mentioned above included the land claimed by the petitioner and the part of the pond which covered it. *Held*, that the two deeds to G. above described, although they were executed by different parties, could have been found to have constituted parts of one transaction and to have been made pursuant to a common understanding and arrangement on the part of all persons interested, that the privilege granted by the deed of R., the mortgagor, which was incorporated by reference in the release of the mortgagee, was inconsistent with any other construction than that the boundary of the respondent's land was the edge of the mill pond, and that a finding for the petitioner was warranted.

PETITION filed in the Land Court on April 4, 1907, for the registration of title to a parcel of land described in said petition, as follows:

"A certain parcel of land situate in Winchester in the county of Middlesex and the Commonwealth of Massachusetts, forming a part of the bed of my mill pond and particularly described as follows: Beginning at the southwesterly corner of the premises at the location of the Boston and Lowell Railroad and land of Mary H. Miller, thence running northerly by the location of said Railroad to the thread of the stream running from Wedge Pond thence turning and running easterly by the thread of said stream, thence turning and running southerly still by the thread of said stream and its confluents if any, including the Abbajona River to the point of intersection made by the thread of said stream with the southerly boundary line of land of Mary J. Price extended easterly, thence turning and running westerly by said southerly line extended easterly as aforesaid to the edge of my said mill pond, thence turning and running northerly by the edge of said pond by land of said Mary J. Price, Anna McNally and Elizabeth McCarthy, thence turning and running westerly by the edge of said pond by land of said Elizabeth McCarthy, other land of the petitioner and land of Mary H. Miller to the point of beginning."

In the Land Court the case was heard by *Davis,* J.

The land described in the petition was a part of a large tract of land partly covered by a large mill pond containing many acres and situated a little easterly from Main Street near the centre of Winchester. On the other side of Main Street was a mill about one thousand feet southerly from the locus, the water power of which was furnished by the mill pond. The mill pond was artificially created by building a dam near Main Street across the Aberjona River (spelled "Abbajona River" in the petition) in the immediate vicinity of the mill. This river is a fresh water stream, flowing in a general southerly direction, and, at a point in the easterly boundary of the locus and considerably above the dam, receives as an affluent from the west the stream running from Wedge Pond mentioned in the description contained in the petition, sometimes known as Cutter Mill Brook, which flows in a general southeasterly direction from Wedge Pond, crossing Main Street and the location of the Boston and Lowell Railroad under culverts.

The matter in issue was the ownership of that portion of the property which was shown by red lines and marked " locus " on a sketch inserted in the bill of exceptions, of which a reduced copy is printed on page 451, the red lines being indicated thus – – – –

The petitioner and the respondent both claimed title under a deed of Patrick T. Jackson to Samuel S. Richardson, dated February 18, 1835, which conveyed to the grantee a mill pond in Winchester, including the land under it, together with a considerable area of margin and upland around the pond. The estate conveyed is shown generally by the sketch.

The land in controversy formed, and still formed at the time of the filing of the petition, a portion of the bed of the mill pond. Samuel S. Richardson, after acquiring the property, laid out a private way running from Main Street along the easterly side of the Boston and Lowell Railroad to the mill pond.

In 1837 Richardson executed and delivered to the president, directors and company of the Charlestown Bank three mortgages, all of which covered the premises described in Jackson's deed, including the land described in the plaintiff's petition. Samuel S. Richardson also made two other mortgages covering

the same estate, all of which mortgages were outstanding and unpaid at the time of the giving of the deed next referred to.

On August 11, 1840, Samuel S. Richardson, being then the owner of the equity of redemption, made a deed to Asahel W. Goodell, dated, acknowledged and recorded on August 11, 1840, in the Middlesex south district registry of deeds, book 395, page 332, conveying to Goodell a portion of the property containing one

Sketch accompanying
Exceptions of Mary H. Miller.

Shore line of Mill Pond in 1835 so far as lying within limits of land conveyed by P.T. Jackson's deed, is shown by dotted line.

The sketch shows parcel first described in deed from Patrick T. Jackson, dated Feb. 18, 1835.

acre and seven poles, more or less, and bounded on one side by the edge of the mill pond. The description in this deed was as follows: " A certain piece of land situated in the southerly part of said — Woburn — containing one acre and seven poles more or less and bounded as follows, to wit, commencing at the southwesterly corner of the premises by land of Daniel Smith and on the easterly side — a street .laid out — the line runs north twenty five degrees east parallel to the easterly line of the Boston and

Lowell Railroad and at the distance of two rods therefrom ten rods to the edge of my Mill Pond thence north eighty four degrees east along the edge of said Mill Pond twelve rods and eighteen links to a corner; thence south five degrees west still along the edge of said Mill Pond fifteen rods and nine links to a board fence; thence north seventy five degrees west by said fence nine rods and twenty one links; thence north sixty five degrees west by land of Daniel Smith six rods to the corner first mentioned, and also giving to said Goodell the privilege of using the aforesaid street which is laid out between said Railroad and the premises above described for any purpose except that of erecting buildings thereon and giving him also the privilege of filling up the Mill Pond on the northerly and easterly sides of the aforenamed premises one rod in width from the lines above described and reserving the right to flow said Mill Pond to the usual height."

On the same day, August 11, 1840, before any effectual entry to foreclose the mortgage, or either of them, the president, directors and company of the Charlestown Bank, all other outstanding mortgagees joining with them, executed and delivered to Goodell a release, acknowledged and recorded on the same day, in the Middlesex south district registry of deeds, book 395, page 330, in which the same premises were released as in the deed of Richardson to Goodell, excepting that in the side toward the pond the boundary was "by the mill pond belonging to Samuel S. Richardson." The description in this deed was as follows: "All our right, title interest and estate in and to a certain piece of land situated in the southerly part of said — Woburn — containing one acre and seven poles more or less and bounded as follows, to wit — westerly by a street laid out on the easterly side of the Boston and Lowell Railroad ten rods; northerly by the Mill Pond belonging to Samuel S. Richardson twelve rods and eighteen links; easterly by said Mill Pond fifteen rods and nine links; southerly nine rods and twenty one links by land of said Richardson and six rods by land of Daniel Smith, with all the privileges mentioned in a deed given by said Samuel S. Richardson to said Goodell this day and subject to all the restrictions and reservations therein mentioned."

Subsequently to August 11, 1840, the president, directors

and company of the Charlestown Bank foreclosed the mortgages by entry and three years' possession thereunder.

The petitioner derived his title by mesne conveyances from the Charlestown Bank made subsequently to the foreclosures, and held also a record title from Richardson's assignee in bankruptcy.

Goodell, by deed dated May 3, 1842, conveyed to Sumner Flagg the premises described in the deed of Samuel S. Richardson to him. Goodell died intestate in 1891, leaving one Nellie E. Buell as his only heir, and all the real estate, if any, which passed to Goodell under the deed from the president, directors and company of the Charlestown Bank and others, which was not included in the deed from Richardson to Goodell, came by descent to said Buell and was by her conveyed to the respondent.

The respondent asked the judge for the following rulings:

" 1. The deed from the Charlestown Bank and others to Goodell conveyed all the interest of the grantors in the fee of the mill pond to the thread of the natural stream of the brook running from Wedge Pond, and to the thread of the natural stream of the Aberjona River.

" 2. The foreclosure of the mortgages held by the Charlestown Bank enured to the benefit of Goodell, so far as he was then interested in the mortgaged premises.

" 3. The foreclosure of the mortgages held by the Charlestown Bank at the time of said conveyances to Goodell vested an absolute title in Goodell of all the real estate which passed under said deed from the Charlestown Bank and others in excess of that which passed under the deed from Richardson to Goodell."

The respondent contended that such rulings, if given, would show that the petitioner had no record title to the premises sought to be registered. The judge refused to make any of the rulings requested, and ruled instead as follows: " In this case I rule that there was released by deed of the president, directors and company of the Charlestown Bank and others to Goodell, dated August 11, 1840, the right, title, interest and estate of the grantors as mortgagees in and to the same, and only the same, land as that described in the deed from Samuel S. Richardson to

said Goodell, dated August 11, 1840, of the mortgagor's equity of redemption under said mortgages. This ruling renders it unnecessary to consider the matter of adverse possession, or further record title." He thereupon ordered a decree for the petitioner; and the respondent alleged exceptions.

*A. C. Vinton*, for the respondent.

*C. F. Jenney*, for the petitioner, was not called upon.

MORTON, J. The judge of the Land Court ruled that the deed from the bank to Goodell released only such title as the bank had in and to the same land and only the same land as that described in Richardson's deed of the same date to Goodell, and that that ruling rendered it "unnecessary to consider the matter of adverse possession, or further record title." The effect of the ruling was to establish the edge of the mill pond as claimed by the petitioner, instead of the thread of the stream as claimed by the respondent, as one of the boundaries of the land described in the bank's deed. The only question before us is the correctness of the ruling so made. We think that it was right.

Although executed by different parties the two deeds could well have been found to have constituted parts of one transaction and to have been made pursuant to a common understanding and arrangement on the part of all persons interested. They bear the same date and were executed and acknowledged on the same day, and were recorded on the same day as that on which they were executed and acknowledged, in the same book, on consecutive pages. Moreover one was a conveyance of the equity of redemption in the premises described in the deed, and the other was a release by the bank of its mortgage. The presumption would be very strong that the release, being a partial one, was intended only to cover so much as was conveyed by the mortgagor. But, however that may be, the description in the release from the bank concludes with the words, "with all the privileges mentioned in a deed given by said Samuel S. Richardson to said Goodell this day and subject to all the restrictions and reservations therein mentioned." Not only, as it might be argued, does this tend still further to show that the two deeds were given as parts of one and the same transaction, and that the premises released were intended to be the same as described in the deed from Richardson to Goodell, but when we

turn to that deed to see what are the restrictions and reserva-
tions therein mentioned we find that the grantee is given "the
privilege of filling up the mill pond on the northerly and easterly
sides of the aforenamed premises one rod in width from the lines
above described." "The lines above described" are the "edge of
my mill pond," and "the edge of said mill pond," and the priv-
ilege thus granted, which is by reference incorporated into the
release from the bank, is entirely inconsistent with a construc-
tion of that instrument which would carry the boundaries on
the mill pond to the thread of the stream.

What the result would be if the release stood alone, and
without any reference to the deed from Richardson to Goodell
or to the restrictions and reservations therein contained, we
need not consider.

*Exceptions overruled.*